IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 4, 2024

**STATE OF TENNESSEE v. DIANN MARIE HICKS**

**Appeal from the Circuit Court for Benton County**
**No. 20CR85  Bruce Irwin Griffey, Judge**

_____

**No. W2024-00068-CCA-R3-CD**
_____

The defendant, Diann Marie Hicks, appeals the order of the trial court revoking her probation and ordering her to serve the remainder of her ten-year sentence in confinement. Upon our review of the record and the parties' briefs, we affirm the revocation and disposition of the defendant's probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and KYLE A HIXSON, JJ., joined.

Stephen L. West, Huntingdon, Tennessee, for the appellant, Diann Marie Hicks.

Jonathan Skrmetti, Attorney General and Reporter; J. Katie Neff, Assistant Attorney General; Neil Thompson, District Attorney General; and Stephanie Hale, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Facts and Procedural History**

On February 28, 2022, the defendant pled guilty to aggravated child endangerment, a Class B Felony, in Benton County, Tennessee, and on March 7, 2022, the defendant pled guilty to possession of methamphetamine with intent to deliver, a Class B Felony, in Henry County, Tennessee. In each case, the defendant was given a ten-year sentence, whereby one year was to be served in jail or a rehabilitation program with the balance to be completed on supervised probation. These two sentences were to run concurrently.

On February 2, 2023, a violation warrant was issued for the defendant in the above cases. The accompanying report alleged the defendant committed a non-technical violation by failing to comply with two conditions of her probation: the requirement that she provide a valid address for her residence and the requirement to allow her probation officer to visit her home. The violation report noted that the defendant had not reported to her probation officer since being placed on probation nearly a year prior and had not been found at any of her known addresses. As a result, the report categorized the violation as an "absconsion."

On April 13, 2023, the defendant was located and served with a warrant for the violation of probation. A hearing was held on January 5, 2024, during which the following facts were established:

On February 28, 2022, the defendant pled guilty to aggravated child endangerment in Benton County and was sentenced to ten years; the first year was to be served in confinement or in a rehabilitation center and her remaining term was to be served on supervised probation. On this same date, Officer Tim Baker, a Court Officer with the Tennessee Department of Correction, testified he gave the defendant his business card and told her to call him upon her release. He also testified that he was given a residential address and phone number for the defendant by the Benton and Carroll County jails. Officer Jeffrey Wilson, the defendant's assigned probation officer with the Tennessee Department of Correction, was also present in the courtroom and witnessed the defendant's plea and sentencing but did not speak with her.

On March 7, 2022, the defendant pled guilty to possession of 0.5 grams or more of methamphetamine with intent to deliver in Henry County. She was, again, sentenced to ten years of split confinement, and this sentence was to be served concurrently with her Benton County sentence.

Per the terms of her sentence, the defendant remained incarcerated until October 31, 2022. However, upon her release, she failed to contact Officer Wilson as she had been instructed during her plea. In an attempt to establish contact with the defendant, Officer Wilson went to the address provided by the Benton and Carroll County jails, but there was no habitable structure at the address. In further attempts to establish contact with the defendant, Officer Wilson searched for an alternative address of the defendant in multiple counties. On two occasions, Officer Wilson requested officers in Carroll County investigate potential addresses for the defendant; however, the defendant was not present at any address. Based on the defendant's failure to report and Officer Wilson's inability to locate her at any of her potential residences, Officer Wilson determined the defendant had absconded, a non-technical violation.

In late 2022, the defendant appeared in court in Carroll County for an unrelated matter. During her appearance, the defendant approached Officer Baker and told him that she was on State probation. Officer Baker testified that he was rushed that day and could not recall her probation status but believed he gave her his card and told her to call him the next day in order to put her in contact with her probation officer. Once again, the defendant failed to contact Officer Baker as instructed.

On January 17, 2023, the defendant was arraigned on a charge in Carroll County and, again, met with Officer Baker for standard intake protocol. The defendant completed a Court Referral form listing a new address. Officer Baker testified that he gave Officer Wilson's card to the defendant and advised her to contact Officer Wilson immediately.

On February 2, 2023, Officer Wilson, having not heard from the defendant, filed a probation violation report and an affidavit for a warrant for the defendant's arrest. On February 9, 2023, the defendant called Officer Wilson. He advised her of the warrant for her arrest for absconding supervision and advised that she needed to report to jail to resolve the violation. Officer Wilson testified there had been no contact between the defendant and himself from the time she was released on October 31, 2022, until her phone call on February 9, 2023. Despite Officer Wilson's directive to report to jail, the defendant failed to comply and was finally arrested on April 13, 2023.

Donna Gilliam, the defendant's mother, testified that after the defendant's release from jail in October, the defendant resided both at Ms. Gilliam's residence and the residence of the defendant's grandmother. Ms. Gilliam testified that no one came to her house looking for the defendant or left any messages.

During the argument portion of the hearing, the defendant argued that her actions had not met the definition of absconsion, stating that absconding consists of "somebody hiding out; someone changing their identity; someone leaving the state; someone, you know, getting a false social security number, and those types of things." The defendant argued that she had merely failed to report to Officer Wilson. According to the defendant, because she spoke with Officer Baker on at least two occasions in court, the defendant did not "hide out," but merely did a "terrible job of reporting."

After hearing the proof and reviewing the entire record, the trial court found that the defendant had failed "to make efforts to report to State Probation as instructed." The trial court accredited the testimony of Officers Baker and Wilson concerning their efforts to find the defendant and their instructions to her to report to her probation officer. Therefore, the trial court stated, "the distinction between absconding and simply failure to report is a difference between unintentional, accidental events in life that permit [*sic*] you from showing up." The trial court further defined absconding as to "intentionally decide not to

show up; intentionally decide not to report to avoid their responsibilities, as far as complying with conditions of the Court." Applying this definition, the trial court found the defendant "willingly absconded. She failed to report. She didn't want to report. She didn't want to respond and be responsible for her conduct, regarding probation."

Subsequently, the trial court turned to the second question of the hearing: the disposition of the revocation. The trial court stated,

> "[I]t would be inappropriate and unfair for [the defendant] to get any kind of disposition . . . anything else than a full revocation. It would undermine the seriousness of her conduct, convictions, the seriousness of being on probation, and the seriousness of complying with the Court's order. It would undermine the sense of fairness and justice in the community if [the defendant] was not to be fully revoked."

Ultimately, the trial court ordered that the defendant's probation be revoked to the Tennessee Department of Correction to serve the balance of her ten-year sentence. On January 18, 2024, the defendant filed a timely Notice of Appeal.

**Analysis**

On appeal, the defendant argues that the trial court erred by finding the defendant violated the terms of the conditions of her probation by categorizing the defendant's actions as absconsion and not as failure to report. The State contends the trial court acted within its discretion in revoking the defendant's probation and ordering her to serve the remainder of her sentence in confinement. After review, we agree with the State.

**I.      Trial Court's Determination of Revocation and Disposition**

A trial court's decision to revoke probation is reviewed for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A probation revocation proceeding ultimately involves a two-step inquiry. A trial court, upon finding by a preponderance of the evidence that a defendant violated the conditions of his or her probation must determine (1) whether to revoke probation, and (2) the appropriate consequence to impose upon revocation." *Id.* at 753.

**a. Trial Court's Decision of Revocation**

A trial court has statutory authority to revoke a suspended sentence upon finding that the defendant violated the conditions of the sentence by a preponderance of the evidence. Tenn. Code Ann. §§ 40-35-310, -311*; see State v. Turner,* No. M2012-02405-CCA-R3-CD, 2013 WL 5436718, at *2 (Tenn. Crim. App. Sept. 27, 2013). "The trial judge has a duty at probation revocation hearings to adduce sufficient evidence to allow him to make an intelligent decision." *State v. Leach,* 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing *State v. Mitchell,* 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). If a violation is found by the trial court during the probationary period, the time within which it must act is tolled and the court can order the defendant to serve the original sentence in full. Tenn. Code Ann. § 40-35-310; *see State v. Lewis*, 917 S.W.2d 251, 256 (Tenn. Crim. App. 1995).

To overturn the trial court's revocation, the defendant must show the trial court abused its discretion*. See State v. Shaffer,* 45 S.W.3d 553, 554-5 (Tenn. 2001). "'A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party.'" *Dagnan*, 641 S.W.3d at 758 (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)). In revocation cases, the trial court abuses its discretion when the record contains "no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Id*. at 554 (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)). "The evidence need only show the trial judge has exercised conscientious judgment in making the decision rather than acting arbitrarily." *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. 1980). "When any probationer commits a non-technical violation, a trial court's authority to impose a consequence for that violation is broad. Indeed, the trial court may fully revoke a suspended sentence for a non-technical violation, even if the probationer has not previously violated the terms and conditions of the suspended sentence." *State v. Rand*, __ S.W.3d __, 2024 WL 2796980, at *3 (Tenn. Crim. App. 2024); *see generally*, Tenn. Code Ann. § 40-35-311(e)(2).

This Court has previously held that the term "to abscond" means "[t]o go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid their process." *State v. Wakefield*, No. W2003-00892-CCA-R3-CD, 2003 WL 22848965, at *1 (Tenn. Crim. App. Nov. 25, 2003) (citing *Black's Law Dictionary* 8 (6th ed. 1990)), *no perm. app. filed.* A finding of absconsion requires action by the defendant, or the failure to act, beyond a single missed meeting. *See Rand*, at *4. This Court has also categorized absconsion more generally as an "act defined by [a] probationer's intent to avoid supervision." *Id.*

In the case at bar, the State presented the testimony of Officers Wilson and Baker establishing that the defendant failed to report and "failed to allow her residence to be

visited by a probation officer." In making the initial determination, the trial court stated, "[the defendant] willingly absconded." After citing the evidence that officers attempted to contact the defendant at multiple addresses and that the defendant continued to fail to report to her probation officer with updates on her whereabouts, the trial court found the defendant "intentionally, and willfully violated the conditions of probation by absconding." Upon finding there was ample evidence that the defendant had violated the terms of her probation, the trial court revoked her probation.

The defendant argues that her actions did not meet the threshold of absconsion and, instead, were merely a failure to report. This argument is without merit. The evidence presented at the hearing established the defendant repeatedly and continuously chose to not communicate with her probation officer despite being advised numerous times by Officer Baker to do so. The defendant's sporadic conversations with Officer Baker do not alleviate her responsibility to report. The evidence established the defendant made no effort to report or to comply with the conditions of her probation until after a probation violation warrant had been issued. Additionally, even after learning that a warrant had been issued and being instructed to report to jail, the defendant failed to comply. This prolonged and continued failure to report amounts to concealment to avoid supervision. Accordingly, the trial court did not abuse its discretion in finding the defendant absconded from supervision and in revoking the defendant's probation.

### b. Trial Court's Determination of Disposition

Having concluded that the trial court's determination to revoke the defendant's probation was not an abuse of discretion, this Court must separately review the trial court's determination of the consequence imposed on the defendant. When a defendant's probation is revoked, the trial court has "discretionary authority to: '(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years.'" *State v. Fleming,* No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *2 (Tenn. Crim. App. Dec. 26, 2018) *(quoting State v. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014)) (citations omitted).[1] "The determination of the proper consequences of the probation violation embodies a separate exercise of discretion." *Id. (*citing *State v. Reams,* 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007)). While it is "not necessary for the trial court's findings to be particularly lengthy or detailed[,]" sufficient reasoning must exist to promote meaningful appellate review. *Dagnan*, 641 S.W.3d at 759 *(*citing *State v. Bise,* 380 S.W.3d 682, 705-06 (Tenn. 2012)).

---

[1] Tenn. Code Ann. §40-35-308(c)(1) statutorily limits trial courts to a maximum of one year extension of probation.

Here, the defendant appeals the trial court's categorization of the defendant's actions as absconsion, rather than the technical violation of failure to report.   As this Court recently held in *State v. Rand*, where a defendant fails to contest the trial court's disposition, apart from their argument that the violation was technical, a "full revocation of [the] suspended sentence was within the broad range of consequences that the trial court could properly consider." *Rand,* at *6.  Without any argument to the contrary, we affirm the trial court's discretionary determination to fully revoke the defendant's sentence.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the revocation of the defendant's probation and the determination of imprisonment as disposition.

_____
J. ROSS DYER, JUDGE